**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| GINA STEWART, individually and on behalf of all persons similarly situated, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Case No. 18-CV-06652 |
| MACHINERY MARKETING INTERNATIONAL, LLC, and PAUL ZIMMER, ) ) ) | |
| Defendants. ) ) | |

## COMPLAINT

Plaintiff Gina Stewart ("Stewart" or "Plaintiff"), individually and on behalf of all persons similarly situated, by and through her attorneys, for her individual, collective and class action complaint against defendants Machinery Marketing International ("Machinery Marketing") and Paul Zimmer ("Zimmer," and collectively, "Defendants"), alleges as follows:

## INTRODUCTION

1.      Gina Stewart was employed by Machinery Marketing International, LLC from approximately February 2012 to her unlawful, retaliatory termination in July 2018.  She received consistently positive reviews and bonuses from the company, and substantially helped to increase its profits.

2.      Despite her hard work and loyalty, Machinery Marketing's president and owner, Paul Zimmer, cheated her and other employees at the company, at every possible turn.  He refused to pay overtime to salaried employees, and falsely represented to employees that they were exempt under the law.   He failed to pay full commissions, by engaging in an ongoing,

common scheme to manufacture substantially inflated and false expenses that reduced employee commissions. And, he actively worked to prevent Stewart and others from achieving commissions through a bid rigging scheme that he used to artificially inflate the price of sales, refusing to honor sales when he deemed the winning bid too low.

3. In so doing, Defendants violated and continue to violate numerous laws, in particular, the Fair Labor Standards Act ("FLSA"), the Illinois Wage Payment and Collection Act ("IWPCA"), the overtime provisions of the Illinois Minimum Wage Law ("IMWL"), and Illinois common law.

4. Defendants violated these laws and duties not only to Plaintiff, but to other employees at Machinery Marketing, upon whose behalf this action is brought as a collective and class action under federal and state law, respectively.

5. When Stewart reached her limit, after Defendants violated of Title VII, and she officially made complaints in July 2018, not only internally but also to the Equal Employment Opportunity Commission ("EEOC"), Zimmer retaliated and terminated her, adding to his list of federal statutory violations. Those claims are currently before the EEOC for investigation.

6. By this action, Plaintiff seeks both for herself and on behalf of the class of all persons similarly situated, who have been victimized by Machinery Marketing and Zimmer directly, the compensation to which they are rightfully entitled under the FLSA, the IWPCA and IMWL, and the common law that protect employees from such abusive misconduct, as well as statutory attorneys' fees, provided by 29 U.S. Code § 216(b), 820 ILCS 115/14(a) 820 ILCS 105/12(a). Plaintiff also seeks an injunction to stop Zimmer from this continued and willful violation of the law, enriching himself at the expense of his employees.

7. Finally, Zimmer's "time's up."

## PARTIES

8.      Plaintiff Gina Stewart is an individual, who resides in Illinois.

9.      Upon information and belief, Machinery Marketing International, LLC, is an Illinois limited liability corporation, with its principal place of business at 1626 West Lake Street, Second Floor, Chicago, Illinois 60612.

10.     Paul Zimmer is an individual, who upon information and belief, resides in Illinois. Zimmer is the president of Machinery Marketing, and its owner and sole member.

## JURISDICTION AND VENUE

11.     Plaintiff brings this action pursuant to 29 U.S.C. 216(b), 820 ILCS 115/14, 820 ILCS 105/12, and Illinois common law.

12.     This Court has original and supplemental jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1337 and 1367.  This court has original subject matter jurisdiction based upon the claims under 29 U.S.C. 207(a)(1) of the Fair Labor Standards Act ("FLSA").

13.     Venue is proper in this District pursuant to 18 U.S.C. § 1391(b)(1)-(2), insofar as a substantial part of the events and/or omissions giving rise to this action occurred within this District and the parties reside in this District.

## FACTS

14.     Machinery Marketing International, LLC ("Machinery Marketing") holds itself out on its website as "a direct purchase, direct sale and online auction site that is specifically tailored to connecting buyers and sellers in the machining and machine tool industry."

15.     Machine Marketing claims to offer a "network of dealers and partnerships along with [its] opt-in buyer subscriber base of over 150k," which allows clients to "reach over 200k active, potential buyers" through its "turnkey solutions".

16.     Machinery Marketing also provides machine "financing alternatives" and removal and delivery service logistics.

17.     The company started in or around February 5, 1997, when it incorporated as a corporation in Illinois under the name Machinery Marketing, Inc.

18.     It subsequently converted to a limited liability company on September 29, 2010, under its current name, after the involuntary dissolution of the corporation on July 1, 2005.

19.     Upon information and belief, at all times relevant hereto, Machinery Marketing had at least two employees, and an annual dollar volume of sales or business done of at least $500,000.

20.     In fact, at all times relevant hereto, Machinery Marketing employed between 20-25 employees.

21.     Machinery Marketing's procurement, sales and logistics employees engaged in interstate commerce, working to buy and sell machinery from and to various customers, including on its online auction website, from different states, and handled goods or materials that moved in commerce.

22.     As a regular part of the performance of their responsibilities, company employees engaged in interstate telephone calls and communications across state lines to solicit and coordinate the purchase and sale of such machines.

23.     Paul Zimmer ("Zimmer") is the president, and upon information and belief, owner and sole member of Machinery Marketing.

A. **MACHINERY MARKETING AND ZIMMER ENGAGED IN SERIAL VIOLATIONS OF THE FAIR LABOR STANDARDS ACT, THE ILLINOIS WAGE AND PAYMENT COLLECTION ACT AND THE OVERTIME PROVISIONS OF THE ILLINOIS MINIMUM WAGE LAW, REFUSING TO PAY OVERTIME TO PLAINTIFF AND THE CLASS.**

24.     In or around February 2012, Gina Stewart ("Stewart") was hired by Machinery Marketing as a Call Center Manager and procurement agent. As a salaried employee, Machinery Marketing treated Stewart as and stated to her that she was exempt from the overtime provisions of the Federal Labor Standards Act ("FLSA") and the Illinois Minimum Wage Law ("IMWL"). This was false. While Stewart had "management" responsibilities and title, those responsibilities were never her primary duties, as she was primarily a procurement agent, and therefore, never qualified as an exempt employee under federal or state law. In addition, in or around April 2017, Stewart resigned her management responsibilities, and thereafter worked exclusively as a non-managerial procurement agent, undeniably as a non-exempt employee under the FLSA and state law. Despite the change of her position, however, Machinery Marketing still treated her as an exempt employee under the FLSA and state law based upon the fact that she was paid on a salary, not hourly, basis.

25.     Upon information and belief, at all times relevant hereto, Machinery Marketing had a policy and practice that salaried employees were not entitled to overtime, failing and refusing to pay overtime to its salaried employees for their hours worked in excess of 40 hours per week.

26.     However, under the FLSA, for nonexempt employees, like Plaintiff during her entire employment, employers are required to pay "for a workweek longer than forty hours … a rate not less than one and one-half times the regular rate at which [the employee] is employed." 29 U.S. Code § 207(a)(1); see also 820 ILCS 105/4a(1) (same).

27.     During the period February 2012 to July 26, 2018, Plaintiff regularly worked in excess of 40 hours each week, but was never paid overtime.  Furthermore, in violation of the FLSA and IMWL, Machinery Marketing and Zimmer never properly recorded or preserved employee overtime regular rates, hours or pay.

28.     Upon information and belief, because Machinery Marketing failed to pay Stewart overtime, it also failed to include commissions in the calculation of employees' "regular rate" to determine any overtime pay, thereby under-calculating any overtime pay.

29.     The FLSA defines the 'regular rate' as all remuneration, including commissions, for employment paid to or on behalf of the employee, before any deductions from wages are made, under 29 U.S.C. §207(e) and 29 C.F.R. §778.109.

30.     So, for example, had Stewart earned $500 in a week, working 50 hours that week, plus a $500 commission, her regular rate would be $20/hour (even though she was paid on a salary basis).  That is $1,000/50 which equals $20.  For her overtime hours of 10 hours, therefore, she should have received that rate, plus half, or $30/hour, and in our hypothetical week an additional $100.  Upon information and belief, Machinery Marketing never properly calculated any overtime pay, however.

31.     As a consequence, overtime wages were not paid at all, for any salaried employees.

32.     Machinery Marketing also never paid the 2% monthly penalty for its failure to pay these wages, which have accrued month after month, under the IMWL, 820 ILCS 105/12(a).

33.      Upon information and belief, Defendants' misconduct was willful, as Defendants had knowledge of their obligations, but repeatedly attempted to mislead employees regarding their employment and exemption status.

6

**B.  MACHINERY MARKETING AND ZIMMER ENGAGED IN A SYSTEMATIC FRAUDULENT BILLING SCHEME, OVERSTATING EXPENSES, WHICH WRONGFULLY DENIED PLAINTIFF AND THE CLASS THE FULL AMOUNT OF THEIR COMMISSIONS.**

34.     Machinery Marketing generally offered its procurement, sales and logistics employees commissions on profits for the machines sold by the company, in which the employee participated in their respective roles.

35.     Stewart, for example, had commission agreements beginning in the year (1) 2013 that provided for 5.0% of net profit on machines she procured, 2.5% of net profit on machines found by call center employees, and 4% of net profit on multiple machines at one location that she procured, and (2) 2017 that provided for 7.5% of net profit on machines she procured, and 3.5% of net profit on lead sales.

36.     The company paid regular wages on a bi-monthly basis, and commissions on a monthly basis.

37.     The company, however, did not provide employees any specific accounting or documentation for alleged expenses in connection with any machine sale.  Consequently, employees had no basis upon which to confirm whether their commissions were properly paid.

38.     When Stewart requested documentation regarding the basis for her commissions, including the expenses, Zimmer refused, telling her, "Why?  Don't you trust me?"  Zimmer frequently rejected requests from other employees seeking documentation for their commission expense deductions, and often retaliated against the employee, attempting to unilaterally change the employee's compensation or terminate the employee.

39.     In several conversations with the company's finance director, regarding Zimmer's questionable business practices, Stewart made further efforts to understand the expenses that

Zimmer had deducted, finding substantial discrepancies and false expenses, including but not limited to:

      a.   over-expensed bank wire fees;
      b.   inspection fees paid by the buyer, not the company;
      c.   loading fees paid by the buyer but deducted as a company expense;
      d.   inflated storage fees; and
      e.   internal commissions recorded as expenses.

40.     Upon information and belief, at all times relevant herein, Machinery Marketing and Zimmer engaged in a systematic, common scheme to manufacture generic, substantially inflated and false expenses to reduce commissions.

**C.    MACHINERY MARKEING AND ZIMMER ENGAGED IN AN ONGOING AUCTION BID RIGGING SCHEME THAT WRONGFULLY DENIED PLAINTIFF AND THE CLASS THEIR COMMISSIONS ON LEGITIMIATE SALES.**

41.     In addition to facilitating direct purchases and sales of machine equipment, Machinery Marketing principally markets its online auction website, bringing buyers and sellers together directly. As described on its website, Machinery Marketing "offers an internet market place ('online') basically consisting of a database, a website and different data processing systems … for the marketing of used machines, plants and other economic goods and overstocks."

42.     In the auction, "[t]he vendor enters a starting price online and optionally a minimum price which he intends to achieve and stipulates the end of the bidding period with date and time (run time of the online-auction). These declarations represent a binding offer on the part of the vendor for the sale of the item. The offer turns to the bidder who places the highest bid during the run time of the online-auction and who exceeds the possibly stipulated minimum price."

43. Further, "[t]he vendee declares the binding acceptance of the offer by bidding online. The acceptance must state a purchase price that is given in the online-mask field and that exceeds the bidding price by one or more steps. The bid expires if another bidder places a higher bid during the run-time of the online-auction. Decisive for the measuring of the run time of the online auction is the official [Machinery Marketing] time. [Machinery Marketing] acts as the message communicator of a declaration of intention of the vendee and as recipient of the vendor on behalf of the acceptance. The vendor undertakes not to declare acceptance for items for which he himself placed a bid or representatives or delegated persons who placed bids in his name."

44. When a procurement or sales employee finds a vendor to place its machine in the auction, that employee, for example, Stewart, is entitled to a commission on the sale in the auction.

45. Upon information and belief, Machinery Marketing and Zimmer engaged in a pattern and practice of bid rigging, making fake bids to artificially manipulate the price at which machinery sells at auction. And when Defendants were not able to successfully drive up the price of an auction item, or otherwise are not satisfied with the auction price, Defendants refused to award sales to the highest bidder, and notified the seller that the auction failed to achieve its desired purchase price.

46. Often in those cases, the machine never sells at auction or later sells at a lower price, preventing or driving down the commission earned by the employee.

## FLSA COLLECTIVE AND IWPCA AND IMWL CLASS ALLEGATIONS

47.     Plaintiff brings this action as a collective and class action pursuant to

Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all of

Machinery Marketing's salaried procurement, sales and logistics employees, during the period (i)

October 1, 2015 to the present for the FLSA, IWPCA and IMWL, (ii) October 1, 2008 to the

present for the breach of contract claims, and (iii) October 1, 2013 to the present for the fraud

claims (collectively, the "Class Period"), who were damaged by Defendants' failure to record

and refusal to pay overtime, fraudulent expense and auction bid rigging schemes, which

wrongfully reduced commissions, and fraudulent representations concerning expenses and

employee exemption status (the "Class").  Excluded from the Class are Defendants herein, the

officers and directors of the Company at all relevant times, members of their immediate families

and their legal representatives, heirs, successors or assigns and any entity in which Defendants

have or had a controlling interest.

48.     The members of the Class are so numerous that joinder of all members is

impracticable.  Throughout the Class Period, the company employed between 20-25 individuals

at any given time, and had a substantial amount of turnover during that period.  While the exact

number of Class members is unknown to Plaintiff at this time, and can only be ascertained

through appropriate discovery, Plaintiff believes that there are at least 30-40 members in the

proposed Class.  Members of the Class may be identified from records maintained by Machinery

Marketing or its payroll agent, and may be notified of the pendency of this action by mail using a

form of notice customarily used in class actions.

49.     Plaintiff's claims are typical of the claims of the members of the Class, as all

members of the Class are similarly affected by Defendants' wrongful conduct in violation of

federal and state statutory law complained of herein.  All members of the Class were subject to the same policy of refusing to pay overtime, and victims of the same common scheme by Defendants to manufacture generic, substantially inflated and false expenses to reduce commissions, as well as the same bid rigging scheme used by Defendants.

50.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and labor litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.  Plaintiff was a long-time employee of Machinery Marketing, with a solid record of employment with the company, and significant knowledge regarding the allegations in this action, given she performed some, but not primarily, management functions during almost the entirety of her tenure with the company.

51.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

> a.   whether Defendants were employers under applicable federal and state statutes;
> b.   whether Plaintiff and members of the Class were employees of Machinery Marketing under applicable federal and statute statutes;
> c.   whether Defendants made general, common false statements to employees regarding expenses and their exemption status;
> d.   whether Defendants had a general practice refusing to pay overtime;
> e.   whether Defendants engaged in a common scheme of manufacturing generic, substantially inflated and false expenses to wrongfully reduce employee commissions;
> f.   whether Defendants engaged in a general bid rigging scheme that resulted in the bad faith refusal to pay earned commissions;
> g.   whether Defendants failed to pay overtime in violation of the FLSA, 29 U.S.C. §201 et seq.;
> h.   whether Defendants failed to make, maintain or preserve accurate records of members of the Class' hours and overtime; and
> i.   whether Defendants' actions were willful;

52.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of litigation make it impossible for members of the Class to individually redress the wrongs done to them.  The violations in this case are complex, implicating complicated statutory and regulatory schemes across federal and state law regarding exemption classification, and overtime payment requirements.  Depending on the length of their employment, the amounts owed to members of the Class could vary dramatically, and for some, potentially amounting to less than $5,000.  Retaining counsel to recover these amounts would prove difficult, assuming that members of the Class even have knowledge of their potential claims, given the false representations made to them by Defendants regarding their employment and exemption status, and the retaliation Defendants inflicted against any employee who questioned Zimmer's practices.  There will be no difficulty in the management of this action as a class action.

## CAUSES OF ACTION

### COUNT I – VIOLATION OF THE OVERTIME PROVISIONS OF THE FAIR LABOR STANDARDS ACT ("FLSA")
### (against all Defendants)

53.     Plaintiff incorporates by reference Paragraphs 1 through 52 as if set forth fully herein.

54.     At all times relevant hereto, Machinery Marketing and Zimmer were "employer[s]" within the meaning of 29 U.S.C. §203(d), insofar as they were persons acting directly or indirectly in the interest of an employer in relation to an employee.  Zimmer is the president of Machinery Marketing and acts directly in the interest of Machinery Marketing in

relation to its employees.  Further, Plaintiff and members of the Class were "employee[s]" within the definition of 29 U.S.C. §203(e)(1), as they were individuals employed by an employer.

55.     In compliance with 29 U.S.C. § 216(b), Plaintiff gives her consent in writing to become a party to this action, and such consent is filed herewith as "Exhibit A" to this complaint.

56.     At all times relevant hereto, Machinery Marketing was an enterprise engaged in commerce, within the definition in 29 U.S.C. §§ 203(b), (s)(1)(A), and 207(a)(1), insofar as it had both employees who (i) engaged in commerce, engaging in the purchase, sale and auction of goods in interstate commerce, and (ii) handled goods or materials that have been moved in or produced for commerce by any person; and the company had annual gross volume of sales made or business done in excess of $500,000 (exclusive of excise taxes at the retail level that are separately stated).

57.     Further, at all times relevant hereto, all procurement, sales, and logistics employees at Machinery Marketing, including but not limited to Plaintiff and members of the Class, engaged in interstate commerce, within the meaning of 29 U.S.C. § 207(a)(1), specifically engaging in telephone calls, arranging for the purchase and sales of machinery, as well as the transportation of goods, across state lines, as a regular part of their responsibilities at the company.

58.     Pursuant to 29 U.S.C. § 207(a)(1), "no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."  Id.

13

59. Pursuant to 29 U.S. Code § 211(c), "[e]very employer subject to any provision of this chapter or of any order issued under this chapter shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him".  Id.

60. Machinery Marketing's procurement, sales and logistics employees, including but not limited to Plaintiff and members of the Class, were regularly employed for workweeks in excess of 40 hours.

61. No statutory exemption under the FLSA applies to Plaintiff or any member of the Class, however.

62. Nevertheless, upon information and belief, Defendants wrongfully and deliberately represented to the procurement, sales and logistics employees, including but not limited to Plaintiff and members of the Class, that they were exempt employees under the FLSA and IMWL, and refused to pay overtime.

63. As such, Defendants never paid overtime wages to Plaintiff or members of the Class.  Indeed, upon information and belief, at all times relevant hereto, Machinery Marketing had a policy and practice that salaried employees were not entitled to overtime, failing and refusing to pay overtime to its salaried employees for their hours worked in excess of 40 hours per week.

64. Further, upon information and belief, Defendants failed to properly make, keep and preserve records regarding the time and day of week when employees' workweek begins, hours worked each day, total hours worked each workweek, regular hourly pay rate, and total overtime earnings for the workweek, under 29 U.S.C. § 211(c) and 29 C.F.R. Part 516.

65.     Zimmer's willful failure to maintain these records is subject to "a fine of not more than $10,000, or to imprisonment for not more than six months, or both," under federal law, as proscribed by 29 U.S.C. § 216(a) and 29 U.S.C. § 215(a)(5).

66.     Defendants' misconduct was willful within the meaning of 29 U.S.C. §255(a), insofar as, upon information and belief, Defendants had knowledge of their obligations to pay overtime, or recklessly disregarded their obligations, and deliberately refused to pay overtime, misleading employees into believing they were exempt from the FLSA and its overtime provisions.

67.     As a direct and proximate cause of Defendants' misconduct, Plaintiff and members of the Class suffered injury and damages.

**COUNT II – VIOLATION OF THE OVERTIME PROVISIONS OF THE ILLINOIS MINIMUM WAGE LAW ("IMWL")**
**(against all Defendants)**

68.     Plaintiff incorporates by reference Paragraphs 1 through 67 as if set forth fully herein.

69.     Machinery Marketing and Zimmer are "employer[s]" under the IMWL, 820 ILCS 105/3(c), as Machinery Marketing is a limited liability company for which one or more persons is gainfully employed on some day within a calendar year, and Zimmer acts directly in the interest of Machinery Marketing in relation to its employees.

70.     Plaintiff and members of the Class are "employee[s]" under 820 ILCS 105/3(d), as they are permitted to work by Machinery Marketing in an occupation under 820 ILCS 105/3(e), including but not limited to procurement, sales and logistics services, for and are gainfully employed by the company.

71.     Pursuant to the IMWL's overtime provisions, 820 ILCS 105/4a(1), "no employer shall employ any of his employees for a workweek of more than 40 hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than 1 1/2 times the regular rate at which he is employed." Id.

72.     Pursuant to 820 ILCS 105/8, "[e]very employer subject to any provision of this Act or of any order issued under this Act shall make and keep for a period of not less than 3 years, true and accurate records of the name, address and occupation of each of his employees, the rate of pay, and the amount paid each pay period to each employee, the hours worked each day in each work week by each employee". Id.

73.     Pursuant to 820 ILCS 105/12(a), "[i]f any employee is paid by his employer less than the wage to which he is entitled under the provisions of this Act, the employee may recover in a civil action the amount of any such underpayments together with costs and such reasonable attorney's fees as may be allowed by the Court, and damages of 2% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid. Any agreement between the employee and the employer to work for less than such wage is no defense to such action."

74.     "Wages" are defined as "compensation due to an employee by reason of his employment," under 820 ILCS 105/3(b).

75.     Machinery Marketing's salaried procurement, sales and logistics employees, including but not limited to Plaintiff and members of the Class, were regularly employed for workweeks in excess of 40 hours.

76.     However, upon information and belief, Defendants wrongfully and deliberately represented to salaried procurement, sales and logistics employees, including but not limited to

16

Plaintiff and members of the Class, that they were exempt employees under the FLSA and IMWL, and refused to pay overtime.

77.     As such, Defendants never paid overtime wages to Plaintiff or members of the Class.

78.     Indeed, upon information and belief, at all times relevant hereto, Machinery Marketing had a policy and practice that salaried employees were not entitled to overtime, failing and refusing to pay overtime to its salaried employees for their hours worked in excess of 40 hours per week.

79.     No statutory exemption under the FLSA applies to Plaintiff or any member of the Class, however.

80.     Further, upon information and belief, Defendants failed to properly keep records regarding the hours worked each day in each work week by each employee, as required by 820 ILCS 105/8.

81.     Zimmer's failure to maintain these records is a Class B misdemeanor under Illinois law, as proscribed by 820 ILCS 105/11(a)(3).

82.     Defendants' misconduct was willful, insofar as, upon information and belief, Defendants had knowledge of their obligations to pay overtime, or recklessly disregarded their obligations, and deliberately refused to pay any overtime.  Regardless, the statute of limitations under the IWPCA is three years, notwithstanding any willful misconduct under 820 ILCS 105/12 (a).

83.     As a direct and proximate cause of Defendants' misconduct, Plaintiff and members of the Class suffered injury and damages, which are ongoing, pursuant to the 2% penalty provisions of the IMWL.

## COUNT III – VIOLATION OF THE ILLINOIS WAGE PAYMENT AND COLLECTION ACT ("IWPCA")
### (against all Defendants)

84.     Plaintiff incorporates by reference Paragraphs 1 through 83 as if set forth fully herein.

85.     Machinery Marketing and Zimmer are "employer[s]" under the IWPCA, 820 ILCS 115/2, as Machinery Marketing is a limited liability company for which one or more persons is gainfully employed, and Zimmer acts directly in the interest of Machinery Marketing in relation to its employees.  Also, pursuant to 820 ILCS 115/13, "any officers of a corporation or agents of an employer who knowingly permit such employer to violate the provisions of this Act shall be deemed to be the employers of the employees of the corporation."  Id.  Defendant Zimmer was an officer of Machinery Marketing who knowingly permitted the violations of the IWPCA alleged herein, and is therefore further properly deemed to be an employer.

86.     Plaintiff and members of the Class are "employee[s]" under 820 ILCS 115/2, as they are permitted to work by Machinery Marketing in an occupation, including but not limited to procurement, sales and logistics services, for and are gainfully employed by the company.

87.     Pursuant to 820 ILCS 115/3, Defendants were "required, at least semi-monthly, to pay every employee all wages earned during the semi-monthly pay period."  Id. "Commissions may be paid once a month."  Id.   "Wages" are defined, under 820 ILCS 115/2, as "any compensation owed an employee by an employer pursuant to an employment contract or agreement between the 2 parties".  Id.

88.     Further, pursuant to 820 ILCS 115/4, Defendants were required to pay such wages "no less than 13 days after the end of the pay period in which such wages were earned."  Id.

89.     Pursuant to 820 ILCS 115/14, "[a]ny employee not timely paid wages, final compensation, or wage supplements by his or her employer as required by this Act shall be entitled to recover … in a civil action … the amount of any such underpayments and damages of 2% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid," as well as "costs and all reasonable attorney's fees." Id.

90.     Machinery Marketing agreed in writing with Plaintiff and, upon information and belief, each member of the Class to pay commissions.  Defendants, however, failed to properly pay full commissions, by manufacturing generic, substantially inflated and false expenses. Substantial commissions are still due and outstanding.

91.     Defendants' misconduct was willful, insofar as, upon information and belief, Defendants had knowledge of their obligations to pay full commissions, and deliberately refused to pay the full commissions owed, misleading employees that they had received their full commissions.  Regardless, the statute of limitations under the IWPCA is three years, notwithstanding any willful misconduct under 820 ILCS 105/12(a).

92.     As a direct and proximate cause of Defendants' misconduct, Plaintiff and members of the Class suffered injury and damages, which are ongoing, pursuant to the 2% penalty provisions of the IWPCA.

**COUNT IV – BREACH OF CONTRACT**
**(against defendant Machinery Marketing)**

93.     Plaintiff incorporates by reference Paragraphs 1 through 92 as if set forth fully herein.

94.     Plaintiff and, upon information and belief, members of the Class entered into valid and enforceable contracts with Machinery Marketing, in which the company agreed to pay

19

them commissions on substantially similar terms, at specified rates, based upon procurement, sales or logistics management of machinery.

95.     Plaintiff and members of the Class performed their obligations under the contract, providing procurement, sales or logistics services to the company.

96.     Machinery Marketing breached its obligations to Plaintiff and members of the class, failing to properly pay full commissions, by engaging in a common scheme to manufacture generic, substantially inflated and false expenses to reduce commissions.

97.     As a direct and proximate cause of Defendant's misconduct, Plaintiff and members of the Class suffered injury and damages.

## COUNT V – BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING
### (against defendant Machinery Marketing)

98.     Plaintiff incorporates by reference Paragraphs 1 through 97 as if set forth fully herein.

99.     Plaintiff and, upon information and belief, members of the Class entered into valid and enforceable contracts with Machinery Marketing, in which the company agreed to pay them commissions on substantially similar terms, at specified rates, based upon procurement, sales or logistics management of machinery.  The agreements, by law, contained an implied covenant of good faith and fair dealing.

100.     Machinery Marketing acted in bad faith and in breach of the implied covenant of good faith and fair dealing in the agreement, by engaging in a common scheme to manufacture generic, substantially inflated and false expenses to reduce commissions.

101.     As a direct and proximate cause of Defendant's misconduct, Plaintiff and members of the Class suffered injury and damages.

## COUNT VI – FRAUD
### (against all Defendants)

102.    Plaintiff incorporates by reference Paragraphs 1 through 101 as if set forth fully herein.

103.    Defendants made false statements of material fact to Plaintiff and members of the Class regarding the nature and amount of expenses properly deducted from sales of machines, from which Plaintiff and members of the Class were to receive commissions.  To be sure, Defendants had a systematic, common scheme to manufacture generic, substantially inflated and false expenses to reduce commissions.

104.    Defendants further made false statements of material fact regarding the exemption status of Plaintiff and members of the Class, making the same representation to them all that they were exempt employees.

105.    Defendants' representations were knowingly and materially false when made, as Zimmer and the company had knowledge of the actual expenses and had knowledge, or recklessly disregarded the fact, that the employees were non-exempt employees under the law.

106.    Defendants made the false representations with the intent to induce Plaintiff and members of the Class to rely upon them to their detriment.

107.    Plaintiff and members of the Class in fact reasonably and justifiably relied on the false representations of Defendants to their detriment, without any knowledge that they were false.  Indeed, Plaintiff and members of the Class had no access to the corporate records that would confirm Machinery Marketing and Zimmer's expense-related fraud, which Defendants concealed from them, and refused to produce.

108.    Defendants' actions were willful.

21

109.    As a direct and proximate cause of Defendants' conduct, Plaintiff and members of

the Class suffered injury and damages.

**WHEREFORE**, Plaintiff prays that the Court enter an order and/or judgment:

(a)    determining that this action is a proper FLSA collective and state law class action, designating Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure and counsel as class counsel;

(b)    issuing a notice pursuant to 29 U.S.C. §216(b) and Rule 23(c)(2)(B), to all similarly situated members of (i) the FLSA opt-in class apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual consent to sue forms pursuant to 29 U.S.C. §216(b), and (ii) the Illinois IMPCA and IMWL class notifying them of all matters required by Rule 23(c)(2)(B)(i)-(vii), and equitable tolling of the statute of limitations from the date of filing this action until the expiration of the deadline for filing FLSA consent to sue forms;

(c)    awarding damages, including compensatory, liquidated and punitive damages, as well as interest, in favor of Plaintiff and the Class against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial;

(d)    a declaratory judgment that the practices complained of herein are unlawful;

(e)    an injunction against Machinery Marketing and its officers, agents, successors, employees, representatives and any and all persons acting in concert with as provided by law from engaging in each of the unlawful practices, policies and patterns set forth herein;

(f)    awarding Plaintiff and the Class their litigation costs, including filing fees and reasonable attorneys' fees; and

(g)    granting such further and other relief as the Court deems just and appropriate under the circumstances.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: Chicago, Illinois
      October 1, 2018

Respectfully submitted,

RAY LEGAL CONSULTING GROUP, P.C.

By: /s/ John H. Ray, III
John H. Ray, III (#6282383)

Ray Legal Consulting Group, P.C.
10044 South Leavitt Street
Chicago, Illinois 60643
(617) 645-3000 (312) 277-6466 (fax)
jray@raylegalconsulting.com

*Attorneys for plaintiff Gina Stewart, individually
and on behalf of all persons similarly situated*